*440 Opinion of
the Court.
THE complainant, Richard Aills, sets up an entry of 7,640 1-2 acres of land, in the name of Evan Sneed, against an entry for 3,400 acres, made in the name of John and James Suggett, the survey on which, interferes in part with the survey of Sneed. Suggetts’ claim has the elder grant, and is held by the defendants in the court below. The claim of Evan Sneed was conveyed by him to William Aills, and by him conveyed to his son, the present complainant.
Among other defences set up by the defendants, is an equity which they claim to hold in Sneed’s claim, so far as it interferes with that of the Suggetts. This defence we will first investigate, before we examine the validity of Sneed’s entry; for if the defendants who already hold the elder legal title, are entitled in equity to the claim of Sneed on the interference, it would be improper to decree against them a conveyance of the legal title.
It appears, that Evan Sneed had sold the whole of his claim to a certain Abraham Sublett, who obtained Sneed’s bond for a conveyance, and thereby became the equitable owner of the whole claim. While Sublett thus held the bond of Sneed, he sold eight hundred acres of the land to William Aills, and gave his bond for a conveyance, dated on the 26th day of November, 1802, expressing that he had sold and was to convey to the said William, eight hundred acres, two choices of Sneed’s survey, the two first choices of what was saved; and if any prior or better claim should interfere, so as to take all or any part of this choice of land away, Sublett was to pay in proportion to the land lost, with lawful interest on the different payments to him, and was to make a deed by the 20th of the ensuing March.
On the 2d day of April, 1804, William Aills made an additional purchase of the same claim from Sublett, and took from him an instrument of writing to the following effect:
“ For value received, I do assign over all my right, title, claim and interest, to William Aills, to a bond and *441 power of attorney that I have on Evan Sneed, for the conveyance of 7,640 1-2 acres of land, reserving in the Commers* deed, all the land in James and John Suggett’s chain of claims on Quicks Run; but will not lay myself liable, at no event, whatever may befal, only the bond William Aills has on me, dated the 26th day of November, 1802, to stand good.”
This writing was signed and sealed by Sublett. On the 20th of May, 1805, John and George Graham, under whom the defendants below hold, made a purchase of all the interference of Suggetts’ claim with Sneed, by their agent, Richard Graham, and obtained from him a bond of that date, binding him firmly to convey the interference, and at the same time, assigned over to them on the bond of Sneed, so much as would cover said interference.
In the year 1806, William Aills having possession of Sneed’s bond, sent one of his sons with it to Virginia, where Sneed resided, and by erasing the assignment on Sneed’s bond from Sublett to Graham, or by inducing Sneed to disregard it, obtained from Sneed a conveyance for the whole tract, specifying on its face, that it was taken in discharge of the bond to Sublett, and conveying Sneed’s title only, without warranty against any person but Sneed and his heirs.
Grahams’ equity being posterior in date to that of William Aills, must yield to it, unless the equity of Aills is insufficient, or he has done some act which has waived it. The solution of this question depends on the fair construction of the purchases made by Aills, and on the proofs in the cause, detailing his acts with regard to the purchase of the Grahams. It is evident from the proofs and too clear to admit a doubt, that Aills did not purchase from Sublett, all the claim of Sneed, and that as much would be left, after satisfying his purchase of 1802, as well as that of 1804, as would amount to the quantity contained in the interference.
This is evident from his language to the counsel he had employed to investigate his claim, from the inducement he held out to Grahams’ agent to purchase the interference from himself, as the agent of Sublett, and his subsequent declarations, that he did not own it all, after he had got the title of the whole. In addition to this, his last purchase from Sublett shows that the in *442 terference was reserved and not sold, and, of course, Sublett was at liberty to sell it to the Grahams. But it is contended, that this last purchase recognizes the validity of the first bond for choice, and, therefore, that he had the right and retains it yet, of making that choice on the interfering ground. But this recognition of the first bond by the last contract, will not bear this construction so well as another which may be given it. It ought to be remembered, that at the date of his second purchase, he was obtaining the whole of Sneed’s bond and the possession of it, and by a subsequent application to Sneed, was to obtain the title of the land from him, who was only bound to convey with warranty against himself and heirs, and that Sublett was bound in his first bond to refund, in case the land was lost. To have the benefit of this stipulation, it was necessary to retain Sublett’s bond, so that if he lost the land, as he had no recourse to Sneed, he might look to Sublett on the bond which he still holds for that purpose. Hence, the clause in the second contract, that the first bond was to stand good; and the expression is perfectly reconcileable on this construction, with that part which expressly reserves the interference with the Suggetts. It is evident from the proofs, and from the subsequent acts of both the parties, that they thus understood the contract. Sublett sold the interference to Graham, supposing it his, and Aills had his choice laid off by survey, excluding the interference, except, perhaps, a small portion of it. Hence he told his counsel he did not hold all the tract; hence he urged the agent of Graham, to purchase from himself the interference, as the agent of Sublett, which character he had, or pretended to have.
But if we are mistaken in this construction of the writings, and are bound to pronounce the first bond an authority in terms not to choose the interference; still, we should not be disposed to decree against the equity of Graham. It is true, it is shown that the agent of Grahams had the inspection of William Aills’ contracts, before he purchased for his principals. It seems, however, that he did not misconstrue them, and that he supposed, as this court does, that the interference was a legitimate object of sale in the hands of Sublett. But if in this he had been mistaken, still, we conceive, that the conduct of Aills could not fail to give the Grahams a superior equity.
*443 Aills, claiming under his first contract, before he made his second; settled on the claim of Sneed, without the interference, and claimed no possession within it. He made an attempt by employing a surveyor, to have the claim laid off without the interference of Sublett. When he employed counsel to investigate this very interference, he did it as the agent of Sublett, as well as for himself. He offered the interference for sale as the agent of Sublett, and advised the agent of the Grahams to purchase it; and it never was, until after the agent of the Grahams had made the purchase of his principal, Sublett, instead of himself and his principal, had revoked his agency, he and Graham, disagreeing about one hundred acres of the interference, which he wanted to get in the sale, as Sublett’s agent, and which was refused by Graham and which broke off further negotiations, that he conceived the design of getting the whole title, and laying his first bond for choice on the interference, and thereby destroying the purchase of Graham, and retaining to himself in some other part of the tract, an equal quantity, for which he never paid.
The holder of an equity, cannot be allowed thus to ensnare another, by inducing him to expend his money for a title, and then to set up a prior equity to extinguish that title, after it is purchased. Priority of equity has been frequently lost by silence in the holder, when he stood by and saw another expend his money without cautioning him; and equally strong is the case of him who, while he discloses a contingent equity, dependent upon choice, yet induces another to purchase the subject on which he can fix his choice. It is one of the strongest assurances, that the choice shall not be fixed on that spot, and he ought to be forever estopped from fixing it there, if he should ever thereafter attempt it.
It is only necessary to observe, that the complainant below, Richard Aills, appears from the proofs in the cause, to have been fully acquainted with the Grahams’ equity before he received the deed from his father. This deed is charged to have been both fraudulent and voluntary. We have not thought it necessary to enquire, whether the proofs in this cause would warrant us in pronouncing it to be so; for were it founded on the valuable consideration recited in the deed, the holder of it having notice of the better equity, must be *444 affected by it. We, therefore, have not deemed it necessary to travel into the validity of the entry; for, we conceive, the court did right on the first point in dismissing the bill.
Decree affirmed.

 So in the transcript of the record filed. The meaning cannot be ascertained.